UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RAY BRANDT  MOTORS, LLC                          CIVIL ACTION

VERSUS                                           NO. 07-29

CERTAIN UNDERWRITERS AT                          SECTION C (5)
LLOYDS, LONDON


ORDER AND REASONS

Before the Court is the motion of defendants, Certain Underwriters at Lloyd's, London

("Underwriters"), for summary judgment dismissing plaintiff's claims with prejudice.  Rec. Doc.

16.  The Court has reviewed the motion, the memoranda, the evidence, and the law, and finds

that the motion should be denied for the following reasons.


I. Procedural and Factual Background

This case involves a suit for insurance benefits under a Dealer Open Lot Policy by

plaintiff, Ray Brandt Motors, LLC ("Ray Brandt") for loss incurred to pre-owned vehicles

damaged as a result of Hurricane Katrina.  The matter was removed to this Court based on

diversity jurisdiction; the Court is satisfied that the amount in controversy at the time of removal

exceeded the jurisdictional minimum of $75,000.[1]   Ray Brandt submitted a claim for the loss of

_____

[1] Concerned about the possibility that the jurisdictional minimum amount in controversy was not present,
and cognizant of its role in ensuring that it properly has subject matter jurisdiction over this removed action, the
Court previously ordered briefing on whether the jurisdictional minimum existed at the time of removal.  Rec. Doc.

a total of twenty vehicles worth approximately $184,000.  From this figure, Underwriters applied

a penalty formula derived from a co-insurance provision in the policy: they divided $1,000,000,

the amount provided in the policy as the maximum amount of coverage for any one loss, by

$1,595,464.96, the value of all units at the locations covered by the policy, and derived a co-

insurance ratio of 63%.  They then subtracted the deductible of $1000 for each unit, to arrive at a

---

24.  In Louisiana, where plaintiffs by law may not specify the numerical value of a damage claim, the removing defendant must prove by a preponderance of the evidence that the jurisdictional minimum exists.  *Luckett v. Delta Airlines, Inc*., 171 F.3d 295, 298 (5th Cir. 1999).  This showing may be made by either (1) demonstrating that it is facially apparent that the claims are likely above the jurisdictional minimum or (2) setting forth the facts in controversy that support a finding of the jurisdictional minimum.  *Id.*  In this case, the plaintiff seeks $68,097.45 from the defendants, the difference in the total of its loss and the amount paid by defendant after application of a co-insurance provision.  In addition, Ray Brandt alleges that the defendants have arbitrarily interpreted the co-insurance clause in refusing to pay a portion of plaintiff's claim, that they improperly asserted that plaintiff had certain coverage limits, that they then misrepresented the terms of the policy at issue in violation of LA. REV. STAT. § 22:1214, and that defendants have otherwise violated LA. REV. STAT. §§ 22:658 and 22:1214.  As a result, Ray Brandt asserts that Underwriters are liable for all damages flowing from its breaches, including attorneys' fees, penalties, and other damages available under Louisiana law, including under LA. REV. STAT. § 22:1220.  *See* Petition, ¶¶ XIII to XV.

   Failure to pay or make a written offer to settle a claim within thirty days of receipt of satisfactory proof of loss when such failure is found to be arbitrary, capricious or without probable cause subjects an insurer to a penalty of 50% of the damages found due and unpaid to the insured plus reasonable attorney's fees, under LA. REV. STAT. § 22:658.  Misrepresenting pertinent facts or insurance policy provision may subject an insurer to penalties of two times damages sustained as a result of that misrepresentation, or $5000, whichever is greater, under LA. REV. STAT. § 22:1220.   An erroneous interpretation of an insurance policy may subject an insurer to penalties under 22:658, if not found to be reasonable, and under 22:1220, and an insurer runs the risk of misinterpreting its policy.  *Haas v. Audobon Indem. Co.*, 722 So.2d 1022, 1998-565 (La.App. 3 cir. 10/21/98), *writ granted in part, judgment amended*, 737 So.2d 736, 1998-2885 (La. 2/5/99); *see also LeBlanc v. Underwriters at Lloyd's London*, 402 So.2d 292, 299 (La.App. 3d 1981).

   A removing party must do more than point to the possibility of attorneys' fees and must present facts indicating the propriety or likelihood of such penalties should the plaintiff prevail.  *See De Aguilar v. Boeing Co.*, 47 F.3d 141, 1410 n.8, 1412 (5th Cir. 1995).  This Court has frequently rejected the argument that requests for penalties and fees under the Louisiana statutes invoked here place a claim otherwise too small over the jurisdictional minimum as entirely speculative, *see, e.g., Jourdain v. State Farm Fire and Casualty Co.*, 07–7103 Rec. Doc. 12 (E.D.La. 12/28/07).  Here, however, the parties have set forth facts in controversy regarding alleged misrepresentation of the policy terms that support a finding that the possibility of recovery of fees and penalties, should the plaintiff prevail, is not entirely speculative.  The Court is thus satisfied that the amount of such penalties and fees is legitimately in controversy, at least to an amount that when added to the $68,097.45 of plaintiff's damages claim places the value of plaintiff's claims above $75,000.

net benefit of $97,949.72.[2]   Underwriters argue that they have remitted all insurance benefits due under the insurance policy pursuant to the conditions and provisions of the policy.   Ray Brandt argues that the co-insurance provision utilized by Underwriters is inapplicable in this case and that it is therefore entitled to the full value of its loss, minus the deductibles for each vehicle.  The difference between the loss and the amount already paid by Underwriters is $68,097.45.

## II. Applicable Law and Analysis

This is a case about a comma, or rather, the absence of one.  The parties dispute the meaning and applicability of a co-insurance provision contained in the policy to the loss at issue. The Court has considered the provision in question, the policy as a whole, the memoranda, and applicable law, and has determined that this provision appears to mean what the plaintiff argues it means, or in the very least, that the plaintiff's interpretation is a reasonable interpretation of an ambiguous policy term.  Therefore, the defendants' motion for summary judgment must fail.

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[2] Ray Brandt subsequently submitted a twenty-first vehicle to its claim; the resulting calculation, based on a slightly slower figure for the value of all units, was approximately $49 less.  Because Underwriters had previously provided payment above the revised calculation, they remitted no additional payment.  This slight difference is not relevant to the Court's analysis.

242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th

Cir. 2001).  When considering a motion for summary judgment, this Court "will review the facts

drawing all inferences most favorable to the party opposing the motion."  *Reid v. State Farm*

*Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The policy provision at the center of this dispute reads:

> The limits of the Underwriters liability for loss in respect of each of such
> Perils shall not exceed:-
>    ...
> (2)    With respect to all units at any one named additional or temporary
>        location or units in transit: the applicable limit of liability stated in
>        the Schedule provided that the Underwriters shall not be liable for a
>        greater proportion of loss to any unit than the total limits of liability
>        for all named locations bears to the aggregate Actual Cash Value of
>        all units covered hereunder.

Rec. Doc. 16, Ex. A, at p.3 of 10.

The policy Schedule provides that the applicable limit of liability for "any one loss at

named locations (as specified above)" is $1,000,000.  *Id.* at p. 1 of 10.  The "named locations"

specified are 8870 Veterans Blvd, Metairie, LA 70003 and 2440 Veterans Blvd, Metairie, LA

70003.[3]  The Schedule also includes a provision that limits the application of the policy to the

locations named, unless there has been notice of temporary or additional locations and

acceptance by Underwriters of such locations in writing:

> The Assured warrants that the named locations specified above are all of the
> locations or spaces within locations owned, rented or controlled wholly or in
> part and used by the Assured as places of display or storage of units.  The
> Underwriters shall not be liable for loss which occurs at any temporary
> location or any losses at additional locations prior to receipt of notice of the

---

[3] The entire loss occurred at 8870 Veterans Blvd.

addition and the Underwriters' acceptance thereof in writing.

*Id.*   The policy specifically defines six terms in a section entitled "Definition."   Three relevant

terms are defined as follows:

> NAMED LOCATION means any location or space within the location used
> by the Assured as a place of display or storage of units at each address as
> shown herein.
> ADDITIONAL LOCATION means any location owned, rented or
> controlled in whole or in part by the Assured which is used as a place of
> display or storage of units subsequent to the inception date of this policy.
> TEMPORARY LOCATION means any location used by the Assured for the
> purpose of storing or displaying units, other than a named or additional
> location or a location named in any other Policy affording the Assured
> insurance against loss covered hereunder.

Id. at p. 4 of 10.

The law regarding this Court's duties in this case and the applicable standards for

interpreting insurance contracts under Louisiana law was succinctly set forth by the Louisiana

First Circuit Court of Appeals:

> An insurance policy is an agreement between the parties and should be
> interpreted by using ordinary contract principles. *Smith v. Matthews,* 611
> So.2d 1377, 1379 (La.1993). The judicial responsibility in interpreting
> insurance contracts is to determine the parties' common intent. LSA-C.C.
> art.2045; *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,* 93-0911
> (La.1/14/94), 630 So.2d 759, 763.  If the language in an insurance contract
> is clear and explicit, no further interpretation may be made in search of the
> parties' intent. LSA-C.C. art. 2046.  The court should not strain to find
> ambiguity where none exists. *Strickland v. State Farm Ins. Cos.,* 607 So.2d
> 769, 772 (La.App. 1st Cir.1992).

> However, if there is ambiguity in an insurance policy, it must be resolved by
> construing the policy as a whole; one policy provision is not to be construed
> separately at the expense of disregarding other policy provisions. *See* LSA-
> C.C. art. 2050; *Louisiana Ins. Guar. Ass'n,* 630 So.2d at 763. Ambiguity
> will also be resolved by ascertaining how a reasonable insurance policy
> purchaser would construe the clause at the time the insurance contract was

5

entered. *Breland v. Schilling,* 550 So.2d 609, 610-11 (La.1989). If, after
applying the other general rules of construction, an ambiguity remains, the
ambiguous contractual provision is to be construed against the insurer who
issued the policy and in favor of coverage for the insured. *See* LSA-C.C. art.
2056; *Louisiana Ins. Guar. Ass'n,* 630 So.2d at 764. The determination of
whether a contract is clear or ambiguous is a question of law. *McMath
Const. Co., Inc. v. Dupuy,* 03-1413 (La.App. 1st Cir.11/17/04), 897 So.2d
677, 681, *writ denied,* 04-3085 (La.2/18/05), 896 So.2d 40.

Huggins v. Gerry Lane Enterprises, Inc. 950 So.2d 750, 753-754, 2005-2665
(La.App. 1 Cir. 11/3/06).

Underwriters argue, in effect, that the co-insurance provision reading "with respect to all
units at any one named additional or temporary location or units in transit" has the same meaning
as if it read "with respect to all units at any one named, additional, or temporary location or units
in transit."  That is, the co-insurance provision applies to each and every named location,
additional location, and temporary location, including to the losses sustained by Ray Brandt at
the named location at issue.  Indeed, according to Underwriters, to not interpret it this way, in
light of the policy as a whole, would be unreasonable or absurd.

The plaintiff cites several grammar authorities, including one specifically relating to legal
writing, that together stand for the proposition that in a series consisting of three or more
elements, the elements are separated by commas.  Rec. Doc. 21 at 2.  The Court has no trouble
crediting these sources and agreeing that for the co-insurance provision to plainly mean what
Underwriters claim it means, a comma would have to be placed after "named" and before
"additional."  As written and by its own terms, this provision appears to clearly and explicitly
state that a co-insurance penalty will be applied to two types of locations, in addition to units in
transit: named additional or temporary locations.  It is less clear, on its face, whether "named" in

6

this sentence is intended to modify "additional locations" only, or "temporary locations" as well. Regardless, it is doubtful that any modern English reader would reasonably read this lone sentence, in the absence of a comma, to delineate three exclusive elements.

Though the Court is mindful that it should not strain to find ambiguity in attempting to discern the parties' intent where the language is clear and explicit, even if the Court were to construe this provision as ambiguous and consider the policy as a whole, the plaintiff would still prevail.  Indeed, in this context, a finding that this language is ambiguous would create a steep barrier for Underwriters, the insurers in this case to succeed in its motion,.   Ray Brandt's interpretation of the provision when construing the policy as a whole would have to have been unreasonable at the time it purchased the policy.   Any reasonable ambiguity must be resolved in favor of coverage for Ray Brandt, and against the insurer who issued the policy.  Thus, in this situation, in order for Underwriters to succeed on their motion, the Court must conclude one of two things: (1) that despite the absence of a comma in the provision at issue, it was unreasonable for Ray Brandt to not read the provision as if it had such a comma, or (2) that Ray Brandt's interpretation achieves an absurd conclusion.[4]

However, when considering the policy as a whole, the Court does not find it possible to so conclude.  In reading the policy as a whole, one finds numerous other commas used to

_____

[4] Underwriters do not argue that there was some sort of mutual mistake and that both parties subjectively and actually understood the policy to mean what it argues it means.  The plaintiff has attached the affidavits of manager/member Raymond J. Brandt and the insurance agent who prepared the application for the policy on behalf of the plaintiff, Donald Kerr.  Both testify that they did not interpret the co-insurance provision to apply to the locations named on page 1 of the policy's Schedule, nor did they receive any other notification or notice from Underwriters relating to the co-insurance provision.  Rec Doc. 21-2 and 21-3.

separate items in lists of three elements.[5]   There was thus no apparent intentional eschewing of conventional English-language comma usage.   Underwriters argue that, particularly when considering the definitions of the defined terms, "named location," "additional location," and "temporary location," it is clear that these three are entirely exclusive of each other.  That is, a named location, "any location or space within the location used by the Assured as a place of display or storage of units at each address as shown herein," must be listed on the Schedule. Additional and temporary locations, by definition, are not named locations.  An additional location is one used to display or store units subsequent to the inception date of the policy.  As it would be impossible for such an additional location to be named on the Schedule, there is no such thing as a "named additional location."

One could reasonably read the co-insurance provision, however, as reflecting the interaction of the limits of liability to $1,000,000 for any one loss at named locations as set forth in the Schedule, the provision stating that Underwriters shall not be liable for loss which occurs at any temporary location or any losses at additional locations prior to receipt of notice of the addition and the Underwriters' acceptance thereof in writing, also in the Schedule, and the definitions.  One could read the provision requiring notice and written acceptance of any additional locations as a requirement that such additional locations be "named" prior to Underwriters assuming liability.   Indeed, Underwriters must accept such a location in writing,

_____

[5] *See, e.g.*, the definition of "additional location," above: "means any location owned, rented or controlled..."; Exclusions, 3.: "...unless the doors, trunk, and windows are secured and locked and the ignition, door, and truck keys are removed...," p. 4 of 10; Section B-Theft: "This section covers theft, larceny, robbery or pilferage," p. 3 of 10.

8

and it not clear where and how such additional locations would be indicated in the policy (none

exist in this case).  Thus it is not as eminently clear as Underwriters suggested that "named

locations" could not be interpreted to include later-added additional locations.  The definition

states that "named locations" are those at each address as "shown herein." It does not expressly

state, however, where or how such addresses can be "shown herein" or limit such a showing to

the Schedule.[6]  As noted by Ray Brandt, it is not unreasonable or absurd to read the co-insurance

provision to specially apply solely to additional or temporary locations not named in the original

policy.  Underwriters may be, through the co-insurance provision, seeking to limit their liability

for losses at locations that were not originally considered when determining the premium.

Despite Underwriters argument, the policy still makes sense when read in accordance with the

plain meaning of the co-insurance provision.

      Underwriters describe this case as involving the common scenario where the policy is

subject to a co-insurance provision.  They argue that if Ray Brandt wished to avoid application

of the co-insurance provision, it could have increased the coverage to cover the $1,595,464.96 in

inventory and paid the additional premium, or instead kept its inventory equal or less than

---

[6] Although "named location" is a defined term in the policy, one could also reasonably read the term "named additional location," again perhaps in reference to the requirement of notice and written acceptance by Underwriters, as indicating something separate and undefined.  Underwriters' argument requires a conclusion that Ray Brandt should have known that the absence of the relevant comma was a either mistake or was meaningless, based on a complicated logical and linguistic analysis of the entire policy.  Ray Brandt would have had to read the defined terms, conclude that Underwriters must have intended the co-insurance provision to refer, despite the absence of the comma, to each of the three relevant defined terms, and to deduce, based on at least three separate policy provisions, that an "additional location" could not possibly be "named."  Ray Brandt would further have had to deduce that Underwriters would not and did not use the word "named" in the policy in any context apart from the defined term "named location." Because, in addition to being in accordance with the plain meaning of the co-insurance provision, the policy as a whole also makes sense as interpreted by Ray Brandt, the Court concludes that its interpretation was reasonable.

$1,000,000.  However, Raymond J. Brandt and Donald Kerr testify in their affidavits that Ray

Brandt purchased the maximum amount of coverage, $1,000,000, offered by Underwriters.

Thus, Ray Brandt was not knowingly and voluntarily under-insured as Underwriters suggest.

Put another way, while Ray Brandt may have understood that Underwriters were clearly limiting

the coverage to only $1,000,000 of potentially $1,595,564.96 in losses, it was not clearly Ray

Brandt's subjective choice to further limit its coverage at any one location to 63% of its losses

below $1,000,000.

    If the co-insurance provision meant what Underwriters claim, it is difficult to understand

why the listing of the different types of locations was even necessary.  Under Underwriters'

interpretation, all locations, regardless of type, were subject to the co-insurance provision.  The

provision could more clearly have been written, therefore, as "with respect to all units at any one

location..." or "...at any one covered location....."

    If Underwriters did intend the provision to read as they now argue, it appears they may

have made a simple typographical error in failing to include the comma.  While this may turn out

to be a very expensive typo in this case, it is Underwriters', as issuers of the policy, mistake to

bear.  This Court concludes that Ray Brandt's interpretation of the co-insurance provision is, in

the very least, a reasonable interpretation of an ambiguous contract term, and that therefore

summary judgment in favor of Underwriters is not appropriate.  The Court need not decide for

the purposes of this motion whether Underwriters' interpretation is reasonable.


    Accordingly,

10

IT IS ORDERED that defendants' motion for summary judgment is hereby DENIED.

Rec. Doc. 16.

New Orleans, Louisiana, this 3rd day of January, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

11